UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:17-544 |
| | § | CIVIL NO. 2:18-340 |
| JONAH JAMES HAWKINS, | § | |
| Defendant/Movant. | § | |

**MEMORNDUM OPINION & ORDER**

Defendant/Movant Jonah James Hawkins filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 25), which he then amended (D.E. 26). In response, the Government moved the Court to deny the motion (D.E. 45), and Movant replied (D.E. 46).

**I. BACKGROUND**

In 2011, Movant was convicted of "Second Degree Criminal Sexual Conduct–Victim Under 13" in the Norman County District Court in Ada, Minnesota. As a result, Movant was required to register as a Tier III Sex Offender pursuant to the Sex Offender Registration and Notification Act (SORNA).

On June 24, 2017, Movant's father reported to the Norman County Sheriff's Office that Movant failed to return home the night before and had left a suicide note. On July 26, 2017, investigators received a telephone hotline tip that Movant was using a LiveMe computer messenger application account under the name "Charlie4c AKA Charlie Ciancanelli." He had also posted videos titled "Padre Island" and "Abandoned Mall," which investigators determined to be Padre Island, Texas, and the Sunrise Mall in Corpus Christi, Texas.

On August 1, 2017, the Minnesota Department of Corrections (MDOC) informed the U.S. Marshals Service (USMS) that there was an active warrant for Movant's arrest for absconding from his parole. MDOC agents believed Movant had attempted to fake his own suicide and traveled south

1

to Texas, where he was using the alias Charlie Ciancanelli and staying on the beach or in hotels in the Port Aransas area. On August 2, 2017, Movant posted additional videos sharing his telephone number and telling viewers to follow a "nice 8-year-old girl" online. Subsequent communications between Movant and the girl contained behavior known to be consistent with "child grooming" perpetrated by sex offenders. On August 3, 2017, deputy Marshals obtained a warrant for Movant's arrest after discovering that he had been staying in a motel in Corpus Christi. The following day, deputy Marshals apprehended Movant at Falcon Lake State Park. At the time of his arrest, he was carrying a two- to three-year-old girl, who was part of a family he had just met in Corpus Christi and traveled with to Falcon Lake.

Movant pled guilty to failing to register as a sex offender in violation of 18 U.S.C. § 2250(a). The Presentence Investigation Report (PSR, D.E. 19) calculated the base offense level for failure to register as a Tier III sex offender at 16. Movant received a three-level reduction for acceptance of responsibility. With a total offense level of 13 and a criminal history category of III, his advisory Guideline sentencing range was 18–24 months. The PSR calculated the Guideline range for supervised release as five years to life and stated that, "[s]ince the instant offense of conviction is a sex offense, the statutory maximum term of supervised release is recommended, pursuant to Policy Statement, U.S.S.G § 5D1.2(c)." PSR ¶ 59.

On January 23, 2018, the Court sentenced Movant to 24 months' imprisonment and 10 years' supervised release. The Court imposed the standard conditions of supervised release recommended by the Sentencing Guidelines. Due to Movant's previous conviction and characteristics, the Court also imposed special conditions of supervision, including registering as a sex offender in the state he resides; participating in a mental health treatment program; not residing, working, accessing or loitering within 1,000 feet of school yards, parks, playgrounds or other places primarily used by children; no contact with any minor child without being supervised by an adult

family member of that child unless granted permission to do so by the probation officer; and not subscribing or accessing any online or Internet service.

Judgment was entered January 29, 2018. Movant did not appeal. On October 9, 2018, he filed the current motion to vacate under 28 U.S.C. § 2255, which he amended a week later with the Court's permission. This action is timely.

**II. MOVANT'S CLAIMS**

Movant's § 2255 motion raises the following claims:

1. The PSR miscalculated Movant's supervised release range under the Sentencing Guidelines;

2. The standard conditions of supervised release are unreasonable;

3. The special conditions of supervised release are invalid; and

4. Defense counsel was ineffective for failing to object to the PSR's miscalculation of Movant's supervised release range under the Sentencing Guidelines.

**III. ANALYSIS**

**A. 28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

**A. Miscalculation of Guideline Supervised Release Range**

Movant first complains that the PSR miscalculated his Guideline supervised release range at five years to life, and the Court erred in relying on this miscalculation when it sentenced him to ten years' supervised release. "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Id.* (citing *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255.")). Because this claim is not cognizable under § 2255, it is dismissed.

**B. Standard Conditions of Supervised Release are Unreasonable**

Movant next complains that certain standard conditions of supervised release are unreasonable. Specifically, Conditions 4 and 9 prevent him from invoking his Fifth Amendment right against self incrimination, Condition 6 is overbroad and infringes upon his Fourth Amendment right to be free from warrantless searches, and Condition 12 contains ambiguous language.[1]

---

1. These conditions are as follows:

   4. You must answer truthfully the questions asked by your probation officer;

   6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view;

   9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours; and

   12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

D.E. 23, p. 3.

Movant did not raise this claim on direct appeal. "It is well settled that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the movant can first demonstrate either (1) 'cause' and 'prejudice,' or (2) that he is 'actually innocent' of the crime for which he was convicted." *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999) (citing *United States v. Sorrells*, 145 F.3d 744, 749 (5th Cir. 1998)). Movant does not claim that he is actually innocent, but instead argues that he did not raise this issue on appeal because he waived his right to appeal in his plea agreement. The fact that Movant waived his right to appeal does not relieve him of this requirement. *See, e.g.*, *United States v. Eaton*, 2000 WL 235261, at *6 (E.D. La. Feb. 29, 2000) (citing *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) ("The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal. After conviction and exhaustion *or waiver of any right to appeal*, we are entitled to presume that the defendant stands fairly and finally convicted." (emphasis added) (internal citations and quotations omitted)).

Even if this claim were not procedurally barred, it is without merit. The standard supervised-release conditions imposed on Movant are reasonable and recommended by the Sentencing Guidelines and the Federal Code of Criminal Procedure for all defendants. *See* 18 U.S.C. § 3563; U.S.S.G. § 5D1.3. Accordingly, this claim is dismissed.

**C. Special Conditions of Supervised Release are Invalid**

Movant next argues that because his failure to register as a sex offender is not a sex offense, the special conditions of his supervised release are invalid. Like his claim concerning the standard conditions of supervised release, Movant did not raise this claim on appeal and is procedurally foreclosed from bringing it now.

Even if the procedural bar did not apply, the Fifth Circuit has explicitly held that "a court 'may impose sex-offender-related special conditions when the underlying conviction is for a non-

sexual offense.'" *United States v. Johnson*, 577 F. App'x 241, 243 (5th Cir. 2014) (quoting *United States v. Weatherton*, 567 F.3d 149, 153 (5th Cir. 2009)). "Because district courts must consider the defendant's history and characteristics, they may take into account 'a defendant's prior conviction for a sex offense'" when imposing such special conditions when the current offense of conviction is not a sex offense. *United States v. Fields*, 777 F.3d 799, 803 (5th Cir. 2015) (quoting *Weatherton*, 567 F.3d at 153).

> Here, as summarized in the PSR:
>
> The defendant was a sex offender, legally required to register, after being convicted of a sex offense that involved a young female child. The defendant had absconded his supervision after leaving a false suicide note, and was later apprehended in Texas, where he found to be communicating with a young female online, believed to be 8 years old, and specifically located by the U.S. Marshals Service while physically carrying a female child, approximately 2 or 3 years old, of a family that he had recently befriended, all behaviors that the defendant was specifically barred from engaging, but behaviors that the defendant chose to continue.

PSR ¶ 68. The special conditions of supervised release were properly imposed to protect the public, deter Movant from future crimes, and to give Movant "an opportunity to get the help and try to get [his] life straightened out in this regard." 1/23/2018 Sent. Tr., D.E. 35 at 5:2-3. Accordingly, this claim is dismissed.

### D. Ineffective Assistance of Counsel

Finally, Movant alleges that his counsel was ineffective for failing to object to the PSR's miscalculation of his supervised release range under the Sentencing Guidelines.

#### 1. Legal Standard

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was

6

outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id*. at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). "A court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

## 2. Analysis

Movant argues that, because his counsel failed to object, the Court miscalculated the advisory Guideline range for his term of supervision based on the PSR's erroneous conclusion that failure to register as a sex offender is a sex offense. Instead of an advisory Guideline range of five years to life, Movant maintains it should have been five years.

The Fifth Circuit has held that failure to register under SORNA is not a sex offense for purposes of U.S.S.G. § 5D1.2(b)(2). *United States v. Segura*, 747 F.3d 323, 329 (5th Cir. 2014). Amendments to the Guidelines further revised the commentary accompanying § 5D1.2(b)(2) to clarify that failure to register as a sex offender does not constitute a sex offense. *United States v. Putnam*, 806 F.3d 853, 855 (5th Cir. 2015) (citing U.S. SENTENCING GUIDELINES MANUAL, SUPP. TO

APP'X C, Amend. 786, at 80–82)). "The Guidelines recommendation for the length of supervised release is thus just five years, rather than the range of five years to life listed in [Movant's] PSR." *Id.* The Government concedes the PSR miscalculated Movant's Guidelines but argues that Movant has not shown prejudice because he was nonetheless sentenced within the statutorily authorized term of supervised release.

"In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). However, the Supreme Court also recognized:

> There may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. The sentencing process is particular to each defendant, of course, and a reviewing court must consider the facts and circumstances of the case before it. *See United States v. Davila,* 569 U.S. 597, 611 (2013) ("Our essential point is that particular facts and circumstances matter"). The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate. And that explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines. The Government remains free to "poin[t] to parts of the record"—including relevant statements by the judge—"to counter any ostensible showing of prejudice the defendant may make." *United States v. Vonn*, 535 U.S. 55, 68 (2002).

*Id.* at 1346–47.

Here, the Government points out that the Court stated that it considered departing upward from the Guidelines: "Paragraph 68 puts you on notice of an upward departure. Looking at the information provided to me about you and your past conduct, I am disturbed about your conduct that led me to you appearing before me right now. . . . I have seriously considered an upward departure in your case." Sent. Tr. at 3:25–4:7. Instead, the Court sentenced Movant to the highest end of the Guidelines. The Court also considered giving Movant a much higher term of supervised release:

> Since this is your first conviction for this offense, I am going to sentence you to 10 years supervised release; but you mess up on supervision, the next time it's going to be 20 years to life for supervision. I considered doing a lot more than that now, but I will give you an opportunity to get the help and try to get your life straightened out in this regard. And you are going to be monitored.

*Id.* at 4:22–5:4.

The Court was aware that it could impose a five-year term of supervision, but it determined Movant warranted a longer term because he continued to engage in prohibited conduct involving young girls following his prior conviction for a sex offense. On the other hand, the Court could have imposed a lifetime term of supervision, as recommended by the PSR. Instead, after considering the 18 U.S.C. § 3553(a) factors—including Movant's history and characteristics, the need to afford adequate deterrence, and the need to protect the public from further crimes by Movant—the Court ultimately concluded that 10 years' supervised release was appropriate. Because the Court would have imposed the same term of supervised release even if counsel had objected to the miscalculation in the PSR, Movant cannot meet *Strickland*'s prejudice requirement. Accordingly, this claim is dismissed.

**IV. CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Movant has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULE 11, § 2255 RULES.

A certificate of appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a

grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V. CONCLUSION

For the reasons set forth above, Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 25) is **DENIED**. He is further **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 8th day of July, 2019.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE